**WO**

SH

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Devin Andrich,

Plaintiff,

v.

Charles Ryan, et al.,

Defendants.

No.  CV 17-00047-TUC-RM

**ORDER**

Plaintiff Devin Andrich, who was formerly confined at the Arizona State Prison Complex ("ASPC")-Safford, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983.  Before the Court are Defendants McEachern and Erwin's Motions for Summary Judgment (Docs. 74, 82) and Plaintiff's Cross-Motions for Summary Judgment (Docs. 93, 121).[1]

**I.    Background**

On screening Plaintiff's First Amended Complaint (Doc. 10) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated access-to-court claims against Defendants Ulibarri (Count One),[2] Erwin (Counts One and Four), McEachern (Count Five), Phillis (Count Five), and Ryan (Count Four), and a state law claim against Defendant

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Docs. 76, 85.)

[2] Service was executed upon Defendant Ulibarri on October 10, 2019 (*see* Doc. 129), and Defendant Ulibarri filed her Answer (Doc. 131) on December 13, 2019.

1   McEachern for breach of fiduciary duty (Count Seven).  (Doc. 19.)[3]  The Court directed
2   Defendants to answer the respective claims against them and dismissed the remaining
3   claims.  (*Id.*)

4       The parties subsequently stipulated to dismiss Plaintiff's access-to-court claim in
5   Count Four to the extent it related to Plaintiff's criminal case, but not as it related to
6   Plaintiff's state bar complaint; the Court granted the stipulation.   (Docs. 57, 60.)
7   Thereafter, the Court dismissed Defendant Phillis from the action for failure to serve.  (Doc.
8   132.)

9       Defendants Erwin and McEachern now move for summary judgement as to
10  Plaintiff's claims against them and Plaintiff cross-moves for summary judgment.  (Docs.
11  74, 82, 93, 121.)

12  **II.    Summary Judgment Legal Standard**

13      A court must grant summary judgment "if the movant shows that there is no genuine
14  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
15  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The
16  movant bears the initial responsibility of presenting the basis for its motion and identifying
17  those portions of the record, together with affidavits, if any, that it believes demonstrate
18  the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

19      If the movant fails to carry its initial burden of production, the nonmovant need not
20  produce anything.  *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-
21  03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to
22  the nonmovant to demonstrate that a factual dispute exists; that the fact in contention is

23  ─────────────────────

24      [3] In the screening Order, the Court construed Counts One, Four, and Five as access-
    to-court claims under the First Amendment and the Due Process Clause.  (*See* Doc. 19 at
25  11–12.)  "[I]f a constitutional claim is covered by a specific constitutional provision, such
    as the Fourth or Eighth Amendment, the claim must be analyzed under the standard
26  appropriate to that specific provision, not under the rubric of substantive due process [under
    the Fourteenth Amendment]."  *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851,
27  853 (9th Cir. 2007) (citing *Graham*, 490 U.S. at 388); *see Albright v. Oliver*, 510 U.S. 266,
    273 (1994).  Here, Plaintiff alleged that his Fourteenth Amendment due process rights were
28  violated by the same conduct that violated his First Amendment rights.  Accordingly,
    Plaintiff's due process claims are subsumed within his First Amendment claims and will
    be dismissed.

material, i.e., a fact that might affect the outcome of the suit under the governing law; and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.   Defendant McEachern's Motion for Summary Judgment**

On July 21, 2016, Defendant McEachern was appointed as advisory counsel in Plaintiff's post-conviction proceedings in the Maricopa County Superior Court arising from Plaintiff pleading guilty to defrauding several former clients. (Doc. 75 (McEachern's Statement of Facts) ¶¶ 1–2.)

During Plaintiff's incarceration at the ADC, he did not ask Defendant McEachern for any legal supplies.  (*Id.* ¶ 10.)  At some point after Plaintiff was released from ADC custody in September 2017, Plaintiff asked Defendant McEachern for paper, pens, and access to an online legal database such as Westlaw or Lexis-Nexis; there is no evidence in the record that Defendant McEachern provided these supplies to Plaintiff.  (Doc. 75 ¶ 11.)

At his deposition, Plaintiff was asked what case law he requested from Defendant McEachern, and Plaintiff responded, "because I was both incarcerated and had no access to case law I'm uncertain that I could have requested a specific case . . . I would not - - at the time I was incarcerated, I would not have known of a specific case for her to send me."

1   (Doc. 75-1 at 26–27 (Pl. Depo. at 63:9–12, 64:3–5).)  In response to Plaintiff's requests for

2   admissions, Defendant McEachern admitted that between July 2016 and February 2018,

3   Plaintiff asked her for case law, including the "China Doll Affidavit case," and she did not

4   provide any case law to Plaintiff.  (Doc. 91-1 at 5 (Pl.'s Ex. A-1).)

5        Plaintiff testified at deposition that he requested his entire criminal case file from

6   Defendant McEachern, but "she was unable to provide it."  (Doc. 75-1 at 30 (Pl. Dep.

7   69:17–19).)  Plaintiff eventually received part of the case file from Bobby Thrasher, the

8   attorney who represented Plaintiff in the criminal proceedings.  (Id. 69:20–22.)  Plaintiff

9   also testified that Thrasher "destroyed much of the correspondence between Plaintiff and

10  Mr. Thrasher, much of the correspondence between Mr. Thrasher and the State, and

11  presumably the correspondence . . . between Mr. Thrasher and Mr. Hopkins [Plaintiff's

12  former advisory counsel]."  (Id. 31–32 (Pl. Dep. 70:20–71:1).)

13       In an order dated August 28, 2017, Maricopa County Superior Court Judge Danielle

14  Viola noted that "this Court on April 2, 2017 mailed to [Plaintiff] the change of plea and

15  sentencing transcripts, along with several other documents."[4]

16       On September 29, 2017, Plaintiff borrowed $403.41 from a family member in order

17  to purchase "Arizona Trial Handbook 2016-2017," which, according to Plaintiff, contained

18  an important analysis that the trial court should have used during Plaintiff's criminal

19  restitution hearing as well as other important case law.  (Doc. 91-1 at 14 (Pl. Decl. ¶¶ 33–

20  34).)

21       On January 6, 2018, Judge Douglas Gerlach of the Maricopa County Superior Court

22  issued an Order in Plaintiff's criminal case indicating that Plaintiff's petition for post-

23  conviction relief was filed on December 18, 2017; Judge Gerlach ordered that Plaintiff's

24  petition was accepted and directed the State to respond.[5]

25

26

27       [4] See http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/082017/m7975447.pdf (last visited Mar. 5, 2020).

28       [5] See http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/012018/m8135998.pdf (last visited Mar. 4, 2020).

- 4 -

On February 27, 2018, Judge Gerlach granted Defendant McEachern's motion to withdraw as counsel in Plaintiff's post-conviction proceedings and ordered Defendant McEachern "to produce [Plaintiff's] entire file . . . no later than March 14, 2018" and to file a Notice of Compliance with the court containing an itemized list of what was in the file; Judge Gerlach also noted that the State's response to Plaintiff's petition had been filed on February 13, 2018.[6]  Defendant McEachern filed a Notice of Compliance on or about February 28, 2018.[7]  Plaintiff filed his reply brief on April 25, 2018.[8]

On May 26, 2018, Plaintiff purchased a copy of "Appellate Practice: Criminal Appeals, Habeas Corpus and Post-Conviction Relief & Forms" after he claims Defendant McEachern failed to provide him a copy; Plaintiff asserts that the book "has 21 pages that provides pro se litigants with the precise roadmap necessary for Rule 32.5 compliance." (Doc. 91 (Pl.'s Statement of Facts) ¶¶ 62–63; Doc. 91-4 at 2 (Pl.'s Ex. K).)

On June 12, 2018, Maricopa County Superior Court Judge Pamela Gates dismissed Plaintiff's petition for post-conviction relief on the merits.[9]  Judge Gates also noted that Plaintiff alleged an ineffective-assistance-of-counsel claim against his trial attorney and his post-conviction relief counsel; with respect to this claim, Judge Gates determined that Plaintiff "failed to establish that his attorneys' performances were deficient or that [Plaintiff] was prejudiced by either counsel's alleged inability to locate records for the State's review after entry of the Plea Agreement and sentencing."[10]

. . . .

---

[6] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/022018/m8202258.pdf (last visited Mar. 5, 2020).

[7] *See* Docket entry for February 28, 2018, http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2014-108114 (last visited Mar. 5, 2020).

[8] *See* Docket entry for April 25, 2018, http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2014-108114 (last visited Mar. 5, 2020).

[9] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/072018/m8377468.pdf (last visited Mar. 5, 2020).

[10] *Id.*

**A.     Access-to-Court Claim (Count Five)**

In Count Five, Plaintiff alleges that Defendant Janelle McEachern was appointed as advisory counsel for Plaintiff's petition for post-conviction relief and that Defendant McEachern violated his First Amendment right to access the courts when she refused to purchase a legal book ("Arizona Civil Trial Practice 2017") or provide Plaintiff with a copy of his case file. (Doc. 10 at 25–28.) Plaintiff alleges that Defendant McEachern's actions prevented him from asserting a meritorious ineffective-assistance-of-counsel claim against defense counsel from Plaintiff's criminal proceedings. (*Id.*)

There are two types of access-to-court claims: those concerning a prisoner's right to affirmative assistance in challenging their sentences or conditions of their confinement and those, like the instant action, concerning a prisoner's right to litigate without active interference. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.2 (9th Cir. 2015).

In this second line of cases, the right of meaningful access to the courts prohibits officials from actively interfering with prisoners' attempts to prepare or file legal documents in all types of civil proceedings so long as those proceedings have a reasonable basis in law or fact. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) ("by virtue of their broader right to petition the government for a redress of [their] grievances under the First Amendment, prisoners must also have opportunities to pursue certain other types of civil litigation") (internal quotations and citations omitted).

Regardless of which type of claim is alleged, to prevail on an access-to-court claim, a plaintiff must show: "(1) the loss of a "nonfrivolous" or "arguable" underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)), *vacated on other grounds* 555 U.S. 1150 (2009).

"The first element, requiring the loss of a nonfrivolous underlying claim, goes to the plaintiff's standing to bring suit." *Phillips*, 477 F.3d at 1076. "To have standing to assert

a claim of denial of access to the courts, an inmate must show 'actual injury.'" *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "In order to establish actual injury, the inmate must demonstrate that official acts or omissions 'hindered his efforts to pursue a [nonfrivolous] legal claim.'" *Id.* (citing *Lewis*, 518 U.S. at 351, 353). *Christopher v. Harbury* makes clear that the plaintiff must describe the "predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." 536 U.S. at 416. A frivolous claim is one without arguable merit either in law or fact, *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or one that has "little or no chance of success." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). A plaintiff does not have to show that his claim would have ultimately been successful on the merits. *Allen v. Sakai*, 48 F.3d 1082, 1085 (9th Cir. 1994). But he must show that it had arguable merit. *Lewis*, 518 U.S. at 353 n.3.

The second element requires that a plaintiff show that the alleged violation of his rights was proximately caused by the defendant. *Id.* at 1077. The third element requires that the plaintiff "have no other remedy than the relief available in his denial of access suit." *Id.* at 1078–79.

Based on the undisputed facts, Defendant McEachern is entitled to summary judgment as to Plaintiff's access-to-court claim because there is no evidence that Plaintiff suffered an actual injury as a result of Defendant McEachern's actions. For the purposes of an access-to-court claim, an "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." *Lewis*, 518 U.S. at 348. In other words, a plaintiff must allege facts to support that a defendant's conduct prevented him from bringing to court a nonfrivolous claim that he wished to present. *Id.* at 351-53. Construing the facts in Plaintiff's favor that Defendant McEachern did not provide Plaintiff with the requested legal supplies or texts, the record shows that Plaintiff was eventually able to obtain the requested materials, file his petition for post-conviction relief, and have the petition decided on the merits. There is no evidence that Plaintiff was unable to bring a specific claim as a result of Defendant McEachern's

1  actions.  Accordingly, summary judgment will be granted to Defendant McEachern as to

2  Plaintiff's access-to-court claim in Count Five.

3  **B.      State Law Breach of Fiduciary Duty Claim (Count Seven)**

4      Plaintiff argues that Defendant McEachern breached her fiduciary duties by failing

5  to provide him with caselaw and other necessary legal materials. An attorney's fiduciary

6  duties include:

7      (1) competent representation and (2) compliance with fiduciary
       obligations. The fiduciary obligations set a standard of
8      'conduct,' analogous to the standard of 'care,' which pertains
       to the requisite skill, knowledge and diligence. Thus, the
9      standard of care concerns negligence and the standard of
10     conduct concerns breach of loyalty or confidentiality.

11 *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1134 (D. Ariz. 2007) (citing 2 Ronald E. Mallen

12 & Jeffery M. Smith, *Legal Malpractice* § 14:2 at 585–86 (2007)); Restatement (Third) of

13 the Law Governing Lawyers § 49 (2000) (tracking this distinction).

14     In Arizona, "the essential elements of legal malpractice based on breach of fiduciary

15 duty include the following: (1) an attorney-client relationship; (2) breach of the attorney's

16 fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages

17 suffered by the client." *Atkins v. Snell & Wilmer LLP*, 2018 WL 5019615, at *8 (Ariz.

18 App. Oct. 16, 2018) (citing *Cecala*, 532 F.Supp.2d at 1135 (citations omitted)). "To breach

19 a fiduciary duty, an attorney must put his or her own interests or the interests of another

20 before the interests of a client." *Id.* (citation omitted).

21     To the extent Plaintiff argues that Defendant McEachern's failure to provide him

22 with case law caused him to incur $472.41 in expenses because he had to personally

23 purchase copies of "Arizona Trial Handbook 2016-2017" and "Appellate Practice:

24 Criminal Appeals, Habeas Corpus and Post-Conviction Relief & Forms" (*see* Doc. 94 at

25 20), this argument does not support a fiduciary breach claim.  "In an action for legal

26 malpractice, 'injury' means 'the loss of a right, remedy or interest, or the imposition of

27 liability.'" *Cecala*, 532 F. Supp. 2d at 1134 (citation omitted).  Plaintiff's purchases of two

28 legal texts does not constitute loss of a right, remedy or interest, and it did not impose

liability on Plaintiff; thus, Plaintiff's purchases do not amount to cognizable injuries for the purposes of proving a fiduciary breach claim.

Plaintiff's fiduciary breach claim also fails because the evidence does not support a finding of actual causation. "The same standards of actual and legal causation that govern an action for attorney negligence apply with equal force in an action for fiduciary breach[.]" *Id.* at 1140. Thus, to satisfy the actual causation requirement:

> [T]he plaintiff must prove that but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit. . . . Conversely, 'but-for' causation does not exist if the event would have occurred without the lawyer's conduct. . . . Where the attorney's error was an omission, the inquiry is, assuming the attorney performed the act, would the plaintiff have achieved the claimed benefit?

*Id.* at 1136 (citations omitted); *see also Hyatt Regency Phoenix Hotel Co. v. Winston*, 907 P.2d 506, 523 (Ariz. App. 1995) ("[m]alpractice causes economic loss if it helps to produce the loss and the economic loss *would not have happened without the malpractice*") (emphasis in original).

Defendant McEachern has presented evidence that in the plea agreement in Plaintiff's underlying criminal case, Plaintiff agreed to pay specific restitution to his former clients/victims and also agreed to those amounts in open court. (Doc. 99 ¶ 41; Doc. 99-1 at 6–23.) Further, in the order denying Plaintiff's petition for post-conviction relief, Judge Gates found that:

> In his Petition for Post-Conviction Relief, [Plaintiff] claims that he was entitled to a restitution hearing on the amounts he agreed to pay as part of the Plea Agreement. Pursuant to Rule 17.4(a)(1), of the Arizona Rules of Criminal Procedure, allows the parties to negotiate and reach agreement on any aspect of the case. In this case, the parties, without the Court's involvement reached an agreement regarding restitution. [Plaintiff] was entitled to a restitution hearing for any amounts other than those agreed-to in the plea agreement. The Court did not enter any additional restitution and thus, [Plaintiff] was not [entitled] to a restitution hearing post-sentencing.

1
2
3
4

> Although the State indicated a willingness to consider reducing the agreed-up[on] restitution, [Plaintiff] stipulated to pay the restitution amounts set forth in the Plea Agreement; therefore, he is not entitled [to] a restitution hearing to dispute the amounts.[11]

5
6
7
8
9
10
11
12
13
14

In response, Plaintiff argues that during the 26-month period between Plaintiff filing his October 2015 notice of post-conviction relief and his December 2018 petition for post-conviction relief, Plaintiff's former clients "gained the time necessary to hide or otherwise destroy Plaintiff's laptop and server hard drive containing Plaintiff's files . . . reasonabl[y] necessary to resolve at least 3 restitution disputes with the State, totaling $53,514.84." (Doc. 94 at 20.)  Plaintiff also asserts that "the single most important piece of evidence necessary for Plaintiff prevailing in his PCR petition was not recovered by Defendant McEachern, Plaintiff's October 2, 2015 letter to Attorney Thrasher, instructing Attorney Thrasher to preserve all text messages and e-mails Attorney Thrasher exchanged with Plaintiff."  (Doc. 94 at 14.)

15
16
17
18
19
20
21
22
23
24
25
26

But Plaintiff fails to support these arguments with any facts showing that the outcome of his post-conviction proceedings would have been different if not for these purported failures by Defendant McEachern.  In dismissing Plaintiff's petition, Judge Gates found that Plaintiff was not entitled to a restitution hearing because the restitution payments were included in the plea agreement that Plaintiff signed.  Plaintiff has not shown how the files on his laptop and hard drive would have resolved "at least 3 restitution disputes," how his October 2015 letter to Thrasher would have changed Judge Gates' conclusion, or that Plaintiff should have prevailed in his post-conviction proceedings absent Defendant McEachern's inaction.  Plaintiff's arguments are purely speculative and unsupported by any evidence.  *See Cecala*, 532 F. Supp. 2d at 1137 ("Determining what 'could have' or 'might have' been decided in the underlying action is speculative and is not the objective of an action for legal malpractice") (citation omitted).

27
28

---

[11]  *See*  http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/072018/m8377468.pdf (last visited Mar. 6, 2020).

1    Defendant McEachern has met her burden of showing that Plaintiff cannot satisfy
2    the actual causation element of his fiduciary breach claim, and Plaintiff has not refuted
3    Defendant McEachern's evidence.  Accordingly, summary judgment will be granted to
4    Defendant McEachern on Plaintiff's state law fiduciary breach claim in Count Seven.

5    **IV.    Defendant Erwin's Motion for Summary Judgment**

6        Plaintiff alleges that ADC's Legal Access Monitor Defendant Erwin denied Plaintiff
7    access to legal supplies needed to defend himself in a state bar disciplinary action, and
8    further alleges that Defendant Erwin did so pursuant to an unconstitutional ADC policy
9    contained in Department Order ("DO") 902. In her Motion for Summary Judgment,
10   Defendant Erwin argues that she did not actively interfere with Plaintiff's right to access
11   the courts and that she is protected by the doctrine of qualified immunity.

12       Under DO 902, *Inmate Legal Access to the Courts*, the ADC must ensure that all
13   prisoners "have direct access to the courts in all legal claims involving direct appeals from
14   the conviction for which they are incarcerated, habeas petitions, civil rights actions, or
15   conditions of confinement." (Doc. 83-1 at 121.)  The ADC defines "qualified legal claims"
16   as:

17           In the direct appeal, any claim of error; in the Post-Conviction
18           Relief proceeding, any non-precluded claim set forth in
             Ariz.R.Crim.P. 32; and in federal court, any claim of error
19           based on a violation of the federal constitution or law.  Forms
             include the Notice of Appeal from the Superior Court
20           (Ariz.R.Crim.P. 31.2(a)); Notice of Post-Conviction Relief,
             Request for Preparation of Post-Conviction Relief Record, and
21           Petition for Post-Conviction Relief (ARiz.R.Crim.P. 32);
             Petition for Review (Ariz.R.Crim.P. 32.9(c)); Petition for
22           Review (Ariz.R.Crim.P. 31.19 and 32.9(g)); Petition for a Writ
23           of Habeas Corpus in state or federal court; and a civil rights
             action or condition of confinement claim (42 U.S.C. [§] 1983).
24

25

26

27

28

1   (*Id.* at 194.)  A "non-qualified legal claim" is defined as "[a]ny legal claims which do not
2   fall under the definition of QUALIFIED LEGAL CLAIMS.  These include divorce, child
3   custody, paternity, name change, etc."[12]

4        Pursuant to DO 902, Prisoners who are pursuing qualified legal claims are permitted
5   to contact an attorney directly, at the prisoner's expense; request a court-appointed
6   attorney; or "[o]btain active assistance" from ADC paralegals.  (*Id.* at 123 (DO 902 § 1.1).)
7   However, the ADC "may not actively assist inmates in the filing of" non-qualified legal
8   claims.  (*Id.* (DO 902 § 1.2).)  Prisoners who need help with non-qualified claims "may
9   seek the assistance of counsel, the courts or other assistance outside the [ADC]" or make
10  use of the legal texts and resource materials available in the prison library.  (*Id.*)

11       Attachment A to DO 902 provides that "[t]he following legal texts and legal
12  resource material may remain for use by inmates and shall be placed in the" library of each
13  unit: a complete set of the Arizona Revised Statutes (non-annotated); Arizona Revised
14  Statutes (annotated) Volumes 5, 5A, 5B, and 5C; Arizona Rules of Court-State; Arizona
15  Rules of Court-Federal; Federal Civil Judicial Procedure and Rules; Federal Criminal Code
16  and Rules; a complete set of ADC Department Orders; the ADC Classification Manual; 28
17  U.S.C. § 2254; 42 U.S.C. §§ 1981-2000e-1; Black's Law Dictionary; Rights of Prisoners
18  4th; The Law and Policy of Sentencing and Corrections 9th Ed.; Post-Conviction Remedies
19  (Means); U.S. Constitution (articles and amendments); Arizona Legal Forms Book-
20  Criminal Procedure; a copy of the *Lewis v. Casey* decision; Prisoner's Handbook (Rule 32)
21  (Petitions for Post-Conviction Relief); The Civil Rights of Institutionalized Persons Act
22  settlement agreement (female units only).  (*Id.* at 143 (DO 902, *Attachment A*).)

23       Attachment B to DO 902 states that the Legal Access Monitor is responsible for
24  making the following court forms available for prisoners to copy: Arizona State Courts–
25  Self-Help Resources; § 1983 Forms Packet; § 2254 Forms Packet; Notice of Post-
26  Conviction Relief; Notice of Appeal from Superior Court; Petition for Post-Conviction

27  ─────────────

28      [12] *See* ADC Glossary of Terms, "Non-qualified legal claims," https://corrections.az.gov/sites/default/files/policies/glossary-of-terms_022120.pdf (last visited Mar. 3, 2020).

Relief; Request for Preparation of Post-Conviction Relief Record; State Court Complaint; Petition for Review, Arizona Rules of Criminal Procedure, Rule 31.19 and Rules 32.9(c) and (g); State and Federal Notice of Change of Address Forms; State Certificate of Compulsory Arbitration; State Deferral or Waiver of Court Fees and Costs; State Deferral or Waiver of Appellate Court Fees and Costs; Mandatory Civil Cover Sheet (Maricopa County). (*Id.* at 144 (DO 902, *Attachment B*).) The Legal Access Monitor is also responsible for providing system-wide monitoring and operational oversight of the prisoner legal access system; supervising staff paralegals; and reordering legal texts. (*Id.* at 125 (DO 902 § 3.3).)

Prisoners are responsible for paying for copies of the above-listed forms. (*Id.* (DO 902 § 2.4).) "For issues relating to qualified legal claims, [photocopies] shall be provided . . . regardless of the inmate's ability to pay." (*Id.* at 133 (DO 902 § 6.1).) "[I]f the inmate has funds available, the cost of the [photocopies] shall be deducted from the inmate's account. If funds are not available, the inmate's account shall be placed on hold . . . until such time as the debt is paid." (*Id.*) However, for non-qualified legal claims, prisoners "who do not have sufficient funds to pay for the copies/service at the time requested shall be denied the service or copies. (*Id.* at 134 (DO 902 § 7.1).) Prisoners are permitted to draft their own pleadings, motions, and other legal documents, but "[h]andwritten forms which are left incomplete shall not be considered for copying." (*Id.* at 125 (DO 902 §§ 2.4.1, 2.4.2).)

Paralegals are responsible for determining what constitutes a qualified versus non-qualified legal claim for purposes of providing photocopying services. (*See id.* at 127 (DO 902 § 3.2.1.4).) "The Paralegal shall consult with the Legal Access Monitor if a question or concern arises." (*Id.*) "The Paralegal's decision is final. Inmates may present concerns regarding qualified legal claim copying" by submitting an inmate letter to the Legal Access Monitor. (*Id.* at 132 (DO 902 § 5.9).)

With respect to legal supplies, DO 902 states that prisoners "shall be provided legal supplies regardless of their ability to pay. If the inmate does not have funds available, a

1    hold shall be placed on the inmate's account."  (*Id.* at 136 (DO 902 § 9.2).)   Indigent

2    prisoners receive the following legal supplies every month: one pen, two pencils, two legal

3    writing pads, five pre-stamped envelopes marked "LEGAL MAIL," and five manila

4    envelopes marked "LEGAL MAIL."  (*Id.* (DO 902 § 9.4).)   Additional legal supplies may

5    be provided if the prisoner shows that the supplies "are necessary in order to present or

6    support a qualified claim."  (*Id.* (DO 902 § 9.5).)   To continue receiving monthly legal

7    supplies, an indigent prisoner "must demonstrate the supplies they have received are

8    actually being used for qualified legal purposes."  (*Id.* (DO 902 § 9.7).)

9         If incoming legal mail is addressed to a prisoner who is no longer housed at the

10    facility that received the correspondence, the staff at that facility must use the Adult

11    Information Management System ("AIMS") and prisoner records to locate the prisoner and

12    forward the legal mail to the prisoner.  (*Id.* at 137 (DO 902 § 11.7.1).)   Likewise, if

13    incoming legal mail does not contain the prisoner's ADC number in the address, the staff

14    must use AIMS to locate the prisoner and forward the legal mail.   (*Id.*)   Legal

15    correspondence should only be returned to the sender "if the addressee is no longer an

16    inmate, releasee or parolee[.]"  (*Id.* (DO 902 § 11.7.4).)

17         On August 23, 2015, while Plaintiff was confined at ASPC-Tucson, Plaintiff

18    submitted a legal supply request asking for supplies to help him prepare documents in a

19    state bar action and an accompanying state bar client protection fund claim that had been

20    brought against him.  (Doc. 127-1 at 7.)   The request was granted in part by Defendant

21    Paralegal Betty Ulibarri, and Plaintiff was approved for one pen, one writing pad, and five

22    manila envelopes.   (*Id.*)   The portion of the form where Plaintiff is supposed to sign

23    indicating that he received the approved supplies is blank.  (*Id.*)

24         On September 14, 2015, the Arizona State Bar served Plaintiff with a formal

25    complaint. (Doc. 83 (Erwin's Statement of Facts) ¶ 14; Doc. 83-1 at 63; Doc. 10 at 16.)[13]

26

27    _____

28         [13] Plaintiff is a former attorney who was licensed to practice law in Arizona from
      2006 until his disbarment in 2014.  (Doc. 104-1 at 2 (Pl. Decl. ¶ 2).)

1   Plaintiff was required to file an answer to the bar complaint within 20 days.  (Doc. 83 ¶ 14;
2   Doc. 10 at 18.)

3        On September 16, 2015, Plaintiff submitted a legal supply request asking for
4   supplies to help him prepare for a pending case in this Court.  (*Id.* at 9.)  The request was
5   granted by Defendant Ulibarri, and Plaintiff was approved for one pen, two writing pads,
6   five pre-stamped envelopes, and five manila envelopes.  (*Id.*)  The portion of the form
7   where Plaintiff is supposed to sign indicating that he received the approved supplies is
8   blank.  (*Id.*)

9        On or about September 22, 2015, Plaintiff submitted a legal supply request form for
10   supplies in defending against the state bar complaint; the following day, Defendant
11   Paralegal Betty Ulibarri met Plaintiff in person and denied Plaintiff's requests because the
12   bar complaint was a "non-qualified case."  (Doc. 83 ¶ 15; Doc. 18 at 20; *see* Doc. 83-1 at
13   62; Doc. 104-1 at 5 (Pl. Decl. ¶ 25).)

14        On September 24, 2015, Plaintiff wrote an inmate letter to ADC's Legal Access
15   Monitor, Defendant Julia Erwin.  (Doc. 83-1 at 66.)  In his letter, Plaintiff stated that he
16   was declared indigent on August 18, 2015, that his response to the state bar complaint was
17   due on October 4, 2015, and that his legal supply and photocopying request had been
18   denied by Defendant Ulibarri because the state bar action was a "non-qualified" case.  (*Id.*)
19   That same day, Plaintiff also submitted an Inmate Informal Complaint Resolution to
20   Corrections Officer ("CO") III Keane that largely mirrored Plaintiff's inmate letter to
21   Defendant Erwin.  (Doc. 110-1 at 4 (Pl.'s Ex. X).)  Also that same day, Plaintiff sent a 9-
22   page, handwritten letter to the Clerk of the Court in his state bar disciplinary action stating
23   that his requests for supplies and photocopies had been denied.  (Doc. 83-1 at 53–61.)

24        On September 28, 2015, Keane sent Defendant Erwin an e-mail with Plaintiff's
25   informal complaint attached.  (Doc. 110-1 at 5 (Pl.'s Ex. Y).)  In the e-mail, Keane asked
26   Defendant Erwin to "provide me with a response to this letter [Plaintiff's informal
27   complaint] that I can include in my written response to this informal resolution attempt."
28   (*Id.*)  The following day, Defendant Erwin responded to Keane's e-mail and stated:

1
2
3
4

> The Department of Corrections ensures all inmates have direct access to the courts in all legal claims involving direct appeals from the conviction for which they are incarcerated, habeas petitions, civil rights[] actions, or conditions of confinement. Unfortunately, [this] inmates [sic] request consisted of a non[-]qualified legal claim and therefore per policy will be denied.

5
6

(*Id.* at 9 (Pl.'s Ex. Z).)  Defendant Erwin also included relevant portions of DO 902 in her response to Keane.  (*Id.*)

7
8
9
10
11

On September 29, 2015, Keane issued an Inmate Informal Complaint Response and stated, "I received your Inmate Informal Complaint Resolution dated 09/24/2015 concerning legal access to courts.  I received the following response from J. Erwin, Paralegal, Legal Access Monitor . . ."  (*Id.* at 11 (Pl.'s Ex. AA).)  Keane then quoted Defendant Erwin's e-mail response verbatim.

12
13
14
15
16
17
18

On October 15, 2015, Plaintiff submitted an Inmate Informal Complaint Resolution to Keane asking for "access to Pacific Reporter, texts with AZ Court of Appeals decisions and/or Westlaw/Lexis-Nexis" because the prison "library fails to provide resources and refuses to remain open during state business hours."  (*Id.* at 13 (Pl.'s Ex. BB).)  The following day, Keane sent Defendant Erwin an e-mail asking her to "please provide me with a response to this letter that I can include in my written response to this informal resolution attempt."  (*Id.* at 15 (Pl.'s Ex. CC).)

19
20

On October 16, 2015, Plaintiff received a response from the Clerk in his state bar action that stated in relevant part:

21
22
23
24
25
26

> While I am sorry to hear about your issues regarding use of the prison's legal services, I regret I cannot comment on or assist with that matter.  I do want to inform you that any form of pleadings filed by you will be accepted, regardless of whether handwritten, on lined paper, or in whatever form available to you.  As long as the pleading contains the correct caption and original signature, the clerk's office will mark the pleading as filed as of the date received [in] the clerk's office.

27

(Doc. 111-1 at 19 (Pl.'s Ex. FF).)

28

On October 19, 2015, the Presiding Disciplinary Judge ("PDJ") in Plaintiff's state bar action entered a notice of default and entry of default against Plaintiff and gave Plaintiff 10 days to plead or otherwise respond.  (*Id.* at 21.)  In January 2016, the notice of default and entry of default was marked "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD."  (*Id.* at 23.)

On November 9, 2015, Defendant Erwin responded to Keane's October 15, 2015 e-mail and stated that the ADC is only responsible for providing prisoners access to the legal texts listed in Attachment A to DO 902 and that "[n]o provision is made in this system for extensive, generalized legal research." (Doc. 110-1 at 18 (Pl.'s Ex. DD).)  Defendant Erwin also stated that:

> [E]ach facility will dictate the amount of resource time based on the yard level, security concerns, number of requests, and court deadlines.  The librarian is aware that any inmate who demonstrated a need for additional resource time (court deadlines, orders, etc.) would be given additional time.  I suggest that if inmate feels he is not being provided ample resource time that he informally attempt to settle that issue with his unit's counselor or librarian.  Inmate is not being denied his Legal Access to the Courts.

(*Id.*)  That same day, Keane responded to Plaintiff's informal complaint and recited Defendant Erwin's e-mail response verbatim.  (*Id.* at 20 (Pl.'s Ex. EE).)

Effective entry of default was entered on November 10, 2015 in the state bar action. (Doc. 83-1 at 70.)  After finally receiving the notice of default, Plaintiff moved to set aside the entry of default in the state bar action and lodged an Answer and a Motion to Dismiss. (Doc. 104 ¶ 61.)  The PDJ in the state bar action denied Plaintiff's motion to set aside, struck Plaintiff's Answer and Motion to Dismiss, entered Plaintiff's notice of appeal, and granted Plaintiff's motion to stay effective entry of default.  (*Id.* ¶ 62.)

On August 31, 2017, the Arizona Supreme Court granted Plaintiff's appeal of the PDJ's decision, vacated the PDJ's order of restitution in the state bar action, and remanded the case for a new mitigation/aggravation hearing.  (Doc. 91-2 at 66.)  On September 11, 2017, the PDJ noted the Supreme Court's decision regarding Plaintiff's appeal and that the

state bar had moved to dismiss the complaint against Plaintiff; the PDJ therefore dismissed the complaint without prejudice.  (*Id.* at 68–69.)

Despite the state bar complaint being dismissed, Plaintiff is still liable to the state bar client protection fund ("CPF") for at least $6,7775 in restitution that the CPF paid to Plaintiff's former clients because the CPF is not bound by decisions of the PDJ.  (Doc. 104 ¶¶ 65–66; *see* Doc. 112-1 at 12 (Pl.'s Ex. HH); Doc. 113-1 at 6, 9, 11 (Pl.'s Ex. JJ).)  The CPF rules do not contain any provisions by which an accused attorney can appeal the CPF's granting of restitution to a claimant.  (*See* Doc. 113-1 at 9 (allowing a claimant to seek reconsideration of the CPF's denial of a restitution claim but making no provision for an accused attorney to seek reconsideration if restitution is granted).)

### A.    Count One

In Count One, Plaintiff alleges that Defendant Erwin denied him access to legal supplies that he needed to defend himself in a state bar disciplinary action and that Defendant Erwin's conduct led to an entry of default and a restitution order being entered against Plaintiff in that action.  Defendant Erwin argues that she did not actively interfere with Plaintiff's right to access the court and that she is entitled to qualified immunity.

### 1.    Qualified Immunity Standard

Government officials are entitled to qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Officials are not entitled to qualified immunity if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby,* — U.S. —, 138 S.Ct. 577, 589 (2018) (quoting *Reichle v. Howards,* 566 U.S. 658, 664, (2012)).  Courts may address either prong first, depending on the circumstances in the particular case. *Pearson v. Callahan*, 555 U.S. 223, 230–32, 235-36 (2009).

For a right to be clearly established there does not have to be a case directly on point; however, "'existing precedent must have placed the statutory or constitutional

1    question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix*

2    *v. Luna*, 136 S. Ct. 305, 308 (2017)).   Accordingly, a right is clearly established when case

3    law has been "earlier developed in such a concrete and factually defined context to make

4    it obvious to all reasonable government actors, in the defendant's place, that what he is

5    doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th

6    Cir. 2017) (citing *White*, 137 S. Ct. at 551).   To determine whether qualified immunity

7    applies, the court must first identify the federal or constitutional right at issue; then it must

8    attempt to "identify a case where an officer acting under similar circumstances as [the

9    defendant] was held to have violated" that right.   *Id.*   If there is no such case, then the right

10   was not clearly established, and the officer is protected from suit.   *See id.* at 1117-18.   "This

11   is not to say that an official action is protected by qualified immunity unless the very action

12   in question has previously been held unlawful, but it is to say that in the light of pre-existing

13   law the unlawfulness must be apparent."   *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)

14   (internal citations omitted).

15                          **2.       Constitutional Violation**

16          To the extent Plaintiff claims that Defendant Erwin hindered his access to the courts

17   by returning the PDJ's October 19, 2015 notice of default, this claim fails to support a

18   constitutional violation.   Plaintiff asserts that "prison staff consulted with Defendant Erwin

19   whether to forward the letter to Plaintiff" or return it to the Clerk in the state bar action and

20   that "Defendant Erwin directed that staff return" the notice of default to the sender.   (Doc.

21   104 ¶ 58.)   But Plaintiff does not point to any evidence in the record showing that the notice

22   of default was returned to the state bar at Defendant Erwin's direction, or that Defendant

23   Erwin had any knowledge of the notice of default.   Accordingly, this portion of Plaintiff's

24   access-to-court claim will be dismissed.

25          Likewise, the November 9, 2015 e-mail response in which Defendant Erwin advised

26   CO III Keane that Plaintiff was not entitled to a copy of the Pacific Reporter or access to

27   Westlaw or Lexis-Nexis does not, on its own, amount to a constitutional violation.   Absent

28   specific evidence regarding how these materials would have assisted Plaintiff in defending

1   the state bar action and without specific facts in the record regarding how Plaintiff's

2   defense of the state bar action was actually hindered after being denied access to these

3   materials, this portion of Plaintiff's access-to-court claim must also be dismissed.

4          However, the Court finds that there is sufficient evidence to create a genuine dispute

5   of fact as to whether Defendant Erwin actively interfered with Plaintiff's right to access

6   the court in the state bar action when she responded to CO III Keane's e-mail on September

7   29, 2015.  First, there is a material issue of fact whether Plaintiff had a nonfrivolous

8   underlying claim.  The record shows that Plaintiff appealed the PDJ's decision to the

9   Arizona Supreme Court, and the court vacated the PDJ's restitution order and remanded

10   the case for a new mitigating/aggravating hearing.  This is sufficient to create a triable issue

11   as to whether Plaintiff's underlying claim was non-frivolous.

12          Second, there is a question of fact as to whether the constitutional violation was

13   caused by Defendant Erwin.  A close reading of DO 902 suggests that Plaintiff was entitled

14   to receive legal supplies for defending the state bar disciplinary action.  DO 902 provides,

15   in relevant part, that prisoners "shall be provided legal supplies regardless of their ability

16   to pay" and that "[l]egal supplies are those supplies actually used for qualified and non-

17   qualified legal claims."  (Doc. 83-1 at 180 (DO 902 §§ 9.2, 9.6).)  Defendant Ulibarri's

18   willingness to approve Plaintiff's August 23, 2015 request for legal supplies in the state

19   bar action and client protection fund claim, which are both non-qualified legal claims,

20   further supports this interpretation of DO 902.  (*See* Doc. 127-1 at 7.)  According to DO

21   902, Defendant Erwin was responsible for monitoring and overseeing the prisoner legal

22   access system and for making sure that Paralegals "[r]esolving questions Paralegals and

23   designated staff may have concerning the inmate legal access to the courts system."  (*Id.*

24   at 171 (DO 902 § 3.3.3).)  Even if Defendant Erwin did not receive Plaintiff's September

25   24, 2015 inmate letter, it is undisputed that Defendant Erwin was informed—via CO III

26   Keane's e-mail—that Plaintiff's September 22, 2015 request for legal supplies had been

27   denied.  In that e-mail, CO III Keane attached Plaintiff's informal complaint and CO III

28   Keane explicitly asked Defendant Erwin what his response to the informal complaint

should be.  Pursuant to her duties under DO 902, Defendant Erwin advised CO III Keane that Plaintiff's "request consisted of a non[-]qualified legal claim and therefore per policy will be denied."  (Doc. 110-1 at 9 (Pl.'s Ex. Z).)  CO III Keane copied Defendant Erwin's response verbatim in his response to Plaintiff's informal complaint.

Construing the facts in Plaintiff's favor, Defendant Erwin was aware that Plaintiff's request for legal supplies for the state bar action had been denied—even though it appears that he was entitled to supplies under DO 902 §§ 9.2 and 9.6—and when consulted on whether Defendant Ulibarri's denial of legal supplies should be upheld, Defendant Erwin, in her role as Legal Access Monitor, advised CO III Keane that the request "will be denied." To the extent Defendant Erwin argues that Plaintiff had sufficient legal supplies to defend the state bar action because his August 23 and September 16, 2015 legal supply requests were granted, this argument fails where Plaintiff did not sign the forms indicating that he actually received the approved supplies and there is no other evidence showing that Plaintiff received said supplies.  Further, Defendant Erwin's argument that Plaintiff's ability to send a nine-page letter to the Clerk of the state bar disciplinary action indicates that he had supplies at his disposal is not proof that Plaintiff had enough supplies to adequately respond to and defend the state bar action.  The Court must accept as true Plaintiff's assertion that between September 14, 2015 and November 13, 2015, he did not have enough writing paper to prepare his Answer, Motion to Dismiss, or other pleadings in the state bar action.  (*See* Doc. 104-1 at 6 (Pl. Decl. ¶ 28).)  On this record, a reasonable jury could conclude that Defendant Erwin's September 29, 2015 e-mail to CO III Keane was the proximate cause of Plaintiff being hindered from defending himself in the state bar action, and thus led to the violation of Plaintiff's right to access the courts.

Third, Plaintiff has presented evidence, which Defendant Erwin has not refuted, that although the state bar complaint was ultimately dismissed, Plaintiff is still liable to the state bar client protection fund for restitution, and that CPF rules do not contain any provisions for Plaintiff to appeal its findings.  (Doc. 104 ¶¶ 57, 62; *see* Doc. 113-1 at 11.)  A reasonable jury could find that that Plaintiff's inability to defend himself in the state bar action

ultimately led to the CPF's decision to order restitution.  Thus, there is a question of fact as to the third element of the access-to-court analysis.

### 3.    Clearly Established Law

Turning to the second prong of the qualified immunity analysis, the Court finds that it was clearly established at the time of Defendant Erwin's conduct that interfering with a prisoner's right to prepare pleadings could constitute a violation of that prisoner's right to access the courts.  At the time, a reasonable official in Defendant Erwin's position should have known that denying an indigent prisoner's request for legal supplies could hinder that prisoner's pursuit of a legal claim.  *See Allen v. Sakai*, 48 F.3d 1082, 1089 (9th Cir. 1994) (denying the defendants' claim to qualified immunity on an access to courts claim where the defendants' denial of photocopying services and a pen resulted in a state court returning Plaintiff's "second petition for post-conviction relief because he had not enclosed multiple copies"); *see also Gluth v. Kangas*, 951 F.2d 1504, 1510 (9th Cir. 1991) ("Litigation necessarily requires some means of accurate duplication because the court and the parties need to refer to the same documents").

For the foregoing reasons, Defendant Erwin is not entitled to qualified immunity, and her motion for summary judgment will be denied as to Plaintiff's claim in Count One that Defendant Erwin's September 29, 2015 e-mail violated his right to access the courts.

### C.    Count Four

In Count Four, Plaintiff sues Defendant Erwin and former ADC Director Charles Ryan and alleges that DO 902 is an unconstitutional policy that was the moving force behind his constitutional rights being violated.  (Doc. 10 at 33.)  The Court construes this as an official capacity claim.

To the extent Plaintiff sues Defendant Erwin in her official capacity, this claim fails. For an individual to be liable in his or her official capacity, a plaintiff must allege injuries resulting from a policy, practice, or custom of the agency over which that individual has final policy-making authority.  *See Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002).  Under Arizona law, the ADC Director is responsible for the overall

operations and policies of the ADC. Ariz. Rev. Stat. § 41-1604(A)(1) (The ADC Director is "responsible for the overall operations and policies of the department.").  Plaintiff has not presented any evidence that Defendant Erwin's decisions constitute final policy for the ADC.  Accordingly, Plaintiff's official capacity policy claim against Defendant Erwin in Count Four will be dismissed.

### V.    Defendant Ryan

Count Four is the only claim remaining against Defendant Ryan,[14] and as previously discussed, Plaintiff's official capacity policy claim in Count Four can only be brought against Defendant Ryan as the final policy-making authority for the ADC.  *See Cortez*, 294 F.3d at 1188.  However, Defendant Ryan retired while this action was pending and is no longer the ADC Director; David Shinn is now the ADC Director, and he will be substituted in his official capacity pursuant to Federal Rule of Civil Procedure Rule 25(d).[15]

Damages are not available in a suit against a state official in his official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  That is because a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office.  *See id.*  Therefore, the Eleventh Amendment bars damages actions against state officials in their official capacity.  *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  Thus, Plaintiff's request for relief as to Count Four is limited to injunctive or declaratory relief.

In his request for relief, Plaintiff seeks an injunction ordering Defendants Ryan, Erwin, and Ulibarri to install at least five computers in each ADC prison library and to make Westlaw, Lexis-Nexis, or other comparable legal research databases available at each

---

[14] In her Motion for Summary Judgment, Defendant Erwin states that Count Four and Defendant Ryan have been dismissed from the action.  (Doc. 82 at 1.)  It appears that Defendant Ryan may also believe that he has been dismissed from the action, as he did not file a dispositive motion, and the deadline to do so has passed.  But Defendant Ryan was not dismissed from the action, the Court only dismissed Plaintiff's access-to-court claim in Count Four to the extent it related to Plaintiff's criminal case, but not as it related to Plaintiff's state bar complaint.  (Docs. 57, 60.)  Thus, the policy claim in Count Four remains against Defendant Ryan as it pertains to Plaintiff's state bar claim.

[15] Because Defendant Ryan was only sued in his official capacity, he will be dismissed from the action.

prison library.  (Doc. 10 at 38.)  Plaintiff also seeks a declaration from the Court that DO 902 is unconstitutional and that Defendants' enforcement of DO 902 violated Plaintiff's constitutional rights.  (*Id.* at 37.)

The ADC Inmate Data Search indicates that Plaintiff was released from ADC custody in September 2017,[16] and Plaintiff's September 11, 2017 Notice of Change of Address (Doc. 14) confirms that he is no longer incarcerated.  Upon Plaintiff's release from custody, his claims for injunctive and declaratory relief were rendered moot.  *See Alvarez v. Hill*, 667 F.3d 1061, 1063–64 (9th Cir. 2012) (former inmate's declaratory and injunctive relief claims moot following release from custody); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("[a]n inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action") (citing *Preiser v. Newkirk*, 422 U.S. 395, 402– 03 (1975)); *see also* Ariz. Rev. Stat. § 31-201.01(A), (D) (the prison director is responsible for the medical and health services for prisoners held in his custody).

Accordingly, because Plaintiff's claims for injunctive and declaratory relief are moot, his official capacity claim against Defendant Shinn must be dismissed, and Defendant Shinn will be dismissed from the action.

**VI.    Plaintiff's Motion for Summary Judgment**

The deadline for filing dispositive motions in this action was June 24, 2019 (Doc. 71), but Plaintiff did not file his Cross-Motion for Summary Judgment against Defendant McEachern until July 15, 2019, and his Cross-Motion for Summary Judgment against Defendant Erwin until September 9, 2019.   Although Plaintiff's cross-motions were included within the same filings as his responses to Defendants' summary judgment motions, it does not negate the fact that the cross-motions are dispositive motions seeking summary judgment against Defendants.  *See United States ex rel. Int'l Bus. Mach. Corp. v. Hartford Fire Ins. Co.*, 112 F. Supp.2d 1023, 1028-29 & n. 6 (D. Haw. 2000) (cross-

---

[16] *See*  https://corrections.az.gov/public-resources/inmate-datasearch (last visited Mar. 4, 2020).

1    motions are still subject to Rule 16 filing deadlines).  Therefore, because the cross-motions

2    were filed well after the dispositive motion deadline and because Plaintiff did not seek an

3    extension for filing his cross-motions, they will be denied as untimely.  *Stringham v. Lee*,

4    No. CIV S-04-1530 JAM GGH P, 2008 WL 2880406, at *2 (E.D. Cal. July 22, 2008)

5    (prisoner-plaintiff's cross-motion for summary judgment stricken because it was filed after

6    the deadline set for filing dispositive motions and the plaintiff sought an extension only for

7    filing his response to the defendants' motion); *Gaston v. Caden*, No. CIV S-03-1707-LKK-

8    CMK-P, 2008 WL 649843, at *1 (E.D. Cal. Mar. 6, 2008) (finding that the plaintiff's

9    cross-motion for summary judgment was untimely and therefore considered only to the

10   extent that it opposed the defendants' summary judgment motion); *Int'l Bus. Mach. Corp.*,

11   112 F.Supp.2d at 1029 (dismissing the defendant's cross-motion because it was filed after

12   deadline for dispositive motions).

13          Accordingly,

14   **IT IS ORDERED:**

15          (1)    The reference to the Magistrate Judge is **withdrawn** as to Defendant

16   McEachern's Motion for Summary Judgment (Doc. 74), Defendant Erwin's Motion for

17   Summary Judgment (Doc. 82), and Plaintiff's Cross-Motions for Summary Judgment

18   (Docs. 93, 121).

19          (2)    Plaintiff's Cross-Motions for Summary Judgment (Docs. 93, 121) are

20   **denied**.

21          (3)    Defendant Erwin's Motion for Summary Judgment (Doc. 82) is **denied in**

22   **part and granted in part** as follows:

23                 (a)    The Motion (Doc. 82) is **denied** as to Plaintiff's access-to-court claim

24          in Count One regarding Defendant Erwin's September 29, 2015 e-mail to CO III

25          Keane;

26                 (b)    The Motion (Doc. 82) is **granted** as to all other claims against

27          Defendant Erwin.

28

(4)     Defendant McEachern's Motion for Summary Judgment (Doc. 74) is **granted**, and Defendant McEachern is **dismissed** from the action **with prejudice**.

(5)     Defendant Ryan is **dismissed** from the action **with prejudice**.

(6)     The Clerk of Court must update the docket to reflect that ADC Director David Shinn is substituted as a Defendant **in his official capacity only** pursuant to Federal Rule of Civil Procedure 25(d).

(7)     Defendant Shinn is **dismissed** from the action **with prejudice**.

(8)     Plaintiff's due process claims and Counts Four, Five, and Seven of the First Amended Complaint are **dismissed with prejudice**.

(9)     In a forthcoming Order, the Court will refer the remaining parties to a settlement conference before a Magistrate Judge as to Plaintiff's remaining access-to-court claim in Count One.

Dated this 22nd day of May, 2020.

_____
Honorable Rosemary Márquez
United States District Judge